IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

THE NORTH CAROLINA FARMERS'      )
ASSISTANCE FUND, INC.,           )
                                 )
                Plaintiff,       )
                                 )
        v.                       )        1:08cv409
                                 )
MONSANTO COMPANY; MONSANTO       )
TECHNOLOGY, LLC; ASGROW SEEDS,   )
INC.; PIONEER HI-BRED            )
INTERNATIONAL, INC.; CROP        )
PRODUCTION SERVICES, INC.;       )
DELTA & PINE LAND COMPANY;       )
and DOW AGROSCIENCES, LLC,       )
                                 )
                Defendants.      )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge

The North Carolina Farmers' Assistance Fund, Inc.
("NCFAF"), brings this lawsuit as "a *qui tam* action under the
false marking provisions of the Patent Act of 1952, as amended,
35 U.S.C. § 292." (Doc. 1 ¶ 4.) Before the court are motions
to dismiss the complaint for failure to state a claim upon which
relief can be granted and for failure to plead with
particularity (or in the alternative for more definite
statement), pursuant to Federal Rules of Civil Procedure
12(b)(6) and 9(b), filed by Defendants Monsanto Company,
Monsanto Technology, LLC ("Monsanto Technology"), Asgrow Seeds

Company, LLC,[1] and Delta & Pine Land Company (referring to themselves collectively "Monsanto") (Doc. 20), Pioneer Hi-Bred International, Inc. ("Pioneer") (Doc. 37), and Crop Production Services, Inc. ("CPS") (Doc. 40 (joining motion to dismiss)). Dow AgroSciences, LLC ("Dow"), which answered the complaint, moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Doc. 30.) Pioneer also argues that section 292 of the Patent Act is unconstitutional, and the court granted the United States of America ("United States") the right to intervene for the limited purpose of responding to that challenge.[2] (Doc. 52.)

The pending motions have been fully briefed, and the court held oral argument on August 30, 2010. For the reasons below, the motions to dismiss will be granted without prejudice. The court in its discretion will treat Dow's motion for judgment on the pleadings as a motion to dismiss, which will also be granted

---

[1]   Asgrow Seeds, Inc., alleges that its legal name is Asgrow Seeds Company LLC. (Doc. 20 at 1.) Moreover, some Defendants' names in the complaint caption vary from that given in their corporate disclosures. (See Docs. 17 & 19.)

[2]   Pioneer asserts that the complaint violates both the U.S. Constitution's "Take Care" Clause (U.S. Const. art. II, § 3 (Executive "shall take Care that the Laws be faithfully executed, and shall Commission all the Officers of the United States")) and "Appointments" Clause (U.S. Const. art. II, § 2, cl. 2 (Executive "shall appoint . . . all . . . Officers of the United States")). Because the court determines the motions on non-constitutional grounds, this argument need not be reached at this time. Cf. Stauffer v. Brooks Bros., Inc., __ F.3d __, 2010 WL 3397419, at *5 (Fed. Cir. Aug. 31, 2010) (declining to address the constitutionality of section 292 because the issue had not been appealed or briefed by the parties).

without prejudice. Consequently, the constitutional challenge is not reached.

**I.    BACKGROUND**

   **A.   Roundup Ready® Soybeans and the Monsanto Patent**

Monsanto has developed a system for weed control employing genetically modified crops that resist its glyphosate herbicide sold under the trademark Roundup®.  <u>Monsanto Co. v. McFarling</u>, 488 F.3d 973, 976 (Fed. Cir. 2007).  Farmers using Monsanto's genetically modified seeds can spray Roundup® to control weeds without fear that it will affect their soybeans.  <u>Id.</u> Monsanto's seeds have been sold under the trade name Roundup Ready®.  <u>Id.</u>

The technology that allows Roundup Ready® seeds to work is contained in Monsanto Technology's U.S. Patent No. 5,352,605 ("the '605 Patent").  The '605 Patent "is directed toward insertion of a synthetic gene consisting of a 35S cauliflower mosaic virus [CaMV] promoter, a protein sequence of interest, and a stop signal, into plant DNA to create herbicide resistance."  <u>Monsanto Co. v. Scruggs</u>, 459 F.3d 1328, 1332 (Fed. Cir. 2006).  "The '605 Patent claims, *inter alia*, DNA sequences and plant cells containing the promoter.  A promoter sequence is a DNA sequence located in proximity to the DNA sequence that encodes a protein and that, in part, tells the cellular

machinery how much of the protein to make." Monsanto Co. v.
McFarling, 363 F.3d 1336, 1339 (Fed. Cir. 2004).

The '605 Patent has been the subject of multiple lawsuits
unsuccessfully challenging its validity. In Scruggs, the
Federal Circuit upheld the patent on summary judgment and found
that farmers who planted Roundup Ready® seeds produced by plants
from a prior season (known as "saved" or "second generation"
seeds) infringed the '605 Patent. The court rejected the
farmers' claim that the '605 Patent did not read on the seeds
because the promoter sequence in those seeds differed from that
in the '605 Patent.[3] Scruggs, 459 F.3d at 1335.

Other courts have held that the planting of saved seeds
from prior years' crops constitutes infringement of the '605
Patent. See, e.g., Monsanto Co. v. David, 516 F.3d 1009, 1014
(Fed. Cir. 2008) (finding that the '605 Patent was infringed by
the planting of saved seeds containing the gene sequence
"because the seed contains the gene"); McFarling, 488 F.3d at
977-78 (finding no patent misuse in the license terms of the

_____
[3]  The court held that a difference in "a few dozen nucleotides" was
not a disparity and found that the promoter in the farmers' seeds
"matches published sequence information about the CaMV 35S promoter,
which is incorporated by reference into the '605 Patent, and therefore
is covered by the patent." Id. at 1335. The court also rejected a
challenge that deletions in the DNA of the farmers' seeds rendered
them outside the '605 Patent; the court held that the deletions in the
farmers' seeds were in the enhancer region of the DNA inserted into
the soybean DNA, not in the promoter region. Id. Accordingly, the
court found, "the Roundup Ready® seeds are covered by the '605
Patent." Id.

'605 Patent because "Monsanto's '605 Patent reads on both purchased and farmer-grown Roundup Ready soybeans"); Monsanto Co. v. Vanderhoof, No. 4:06-CV-134, 2007 WL 1240258, at *5 (E.D. Mo. April 27, 2007) (finding that the planting of saved Roundup Ready® soybean seeds infringed the '605 Patent); Monsanto Co. v. Dawson, No. 4:98CV2004, 2000 WL 33953542 (E.D. Mo. November 24, 2000) (same). As summarized by the district court for the Northern District of Indiana:

> The claims of the '605 patent have been construed numerous times by other district courts, as well as the Federal Circuit, in cases involving the replanting of saved Roundup Ready soybeans. These cases have concluded that Claims 1, 2, 4 and 5 of the '605 patent cover saved Roundup Ready soybeans. Thus, there is ample case law holding that replanting saved Roundup Ready® crops is a direct infringement of the '605 patent.

Monsanto Co. v. Parr, 545 F. Supp. 2d 836, 841 & n.12 (N.D. Ind. 2008) (citing cases in omitted footnote); accord Monsanto Co. v. Strickland, No. 4:05-3062, 2007 WL 3046700, at *6 (D.S.C. Oct. 16, 2007) (holding that "[t]he '605 patent has been found to be valid and infringed in a number of cases") (construing claim and finding infringement).

## B. NCFAF's Complaint

NCFAF is a North Carolina non-profit allegedly formed for the purpose of "supporting small, independent, family farming

operations in North Carolina."[4] (Doc. 1 ¶¶ 5, 6.) NCFAF alleges that Defendants falsely mark Roundup Ready® soybean seeds in their packaging and related advertising by claiming patent protection under the '605 Patent. In relevant part, the complaint alleges the following:

- "Upon information and belief, each of the Defendants grows and sells seeds which contain genetic material not normally found in soybeans." Monsanto or its subsidiaries or licensees sell a line of soybean seeds containing genetic material which confers tolerance to the herbicide glyphosate, including an herbicide known under the brand name Roundup. (Id. ¶¶ 17 & 18.)

- Upon information and belief, Monsanto Technology LLC, a wholly-owned subsidiary of Monsanto Company, is record owner of certain patent rights, including the '605 Patent, and each of the other Defendants, including Monsanto Company, is a licensee of the '605 Patent. (Id. ¶¶ 19, 20.)

- Upon information and belief, the license of the '605 Patent requires the licensed Defendant to mark the packaging with the '605 Patent. (Id. ¶¶ 21, 22.)

- "Monsanto claims that Roundup Ready soybean seed . . . is a 'patented article' covered by the '605 [P]atent." Monsanto has "aggressively pursued" patent infringement cases, having brought "numerous suits against farmers" who plant soybean seeds produced from a previous crop grown from Roundup Ready soybean seeds (or who obtain so-called "brown bag" saved seeds from an unauthorized source). Monsanto claims that the act of using seed saved from a previous crop violates agreements farmers have with Monsanto which inform farmers of Monsanto's licensing policy and

---

[4] NCFAF asserts that its interest "in this case is to aid family farmers by obtaining a judicial determination of the scope of the '605 patent, by preventing Monsanto and its licensees from asserting the '605 patent against conduct that does not infringe the patent, and by applying the statutory penalty for false marking to Monsanto and its licensees. (Doc. 32 at 4.)

Monsanto's claims that the soybean seed purchased is covered by the '605 Patent. (<u>Id.</u> ¶¶ 23-26.)

- The "stream of license revenue depends on Monsanto's ability to convince farmers . . . that they must purchase new Roundup Ready soybean seed each year because Roundup Ready soybean seed is covered by the '605 [P]atent." (<u>Id.</u> ¶ 28.)

- To create a fear of infringement lawsuits, Monsanto and other Defendants mark Roundup Ready seed packages and advertisements with the number of the '605 Patent. (<u>Id.</u> ¶ 29.)

- "Upon information and belief, the contents of the bags of seeds sold commercially by Defendants under the brand name "Roundup Ready" are not covered by any claim of the '605 [P]atent." (<u>Id.</u> ¶ 36.)

- "Upon information and belief, the act of replanting seeds from a crop grown from seeds purchased from the Defendants does not create any plant or seed covered by the '605 [P]atent." (<u>Id.</u> ¶ 37.)

- Upon information and belief, each of the Defendants marks bags of Roundup Ready soybean seeds and publishes brochures, agreements, and other advertising importing that the products are protected by the '605 Patent. (<u>Id.</u> ¶¶ 38, 39.)

- "Upon information and belief, each of the Defendants knows or should have known that the contents of the bags are not covered by any claim of the '605 [P]atent." (<u>Id.</u> ¶ 40.)

- "Upon information and belief, each of the Defendants marks or has marked its bags for the purpose of deceiving the public as part of Monsanto's scheme to extract a continuing stream of license revenue from farmers through the intimidatory threat of a patent infringement lawsuit." (<u>Id.</u> ¶ 41.)

- "As such, each of the Defendants has engaged in numerous acts of false marking in violation of 35 U.S.C. § 292." (<u>Id.</u> ¶ 42.)

NCFAF seeks relief in the form of (1) a finding that each
Defendant falsely marked Roundup Ready® seed packaging and
related marketing material with words or numbers importing that
the seeds were covered by the '605 Patent, (2) an order that
Defendants cease using the '605 Patent number with respect to
Roundup Ready® soybean seeds, and (3) a fine of $500 for each
instance of use of the '605 Patent number, with one-half of the
recovery to go to NCFAF and one-half to the United States. (Id.
Prayer for Relief.)

## II. ANALYSIS

### A. Rule 12(b)(6) Motions

The purpose of a motion pursuant to Federal Rule of Civil
Procedure 12(b)(6) is to "test[] the sufficiency of a complaint"
and not to "resolve contests surrounding the facts, the merits
of a claim, or the applicability of defenses." Republican Party
of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citation
omitted).[5] In considering a Rule 12(b)(6) motion, a court "must
accept as true all of the factual allegations contained in the
complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007)
(citations omitted), and all reasonable inferences must be drawn

---

[5] Although, as the parties agree, appellate review resides with the
Federal Circuit, the procedural rules of the Fourth Circuit apply with
respect to motions to dismiss and for judgment on the pleadings. See
Merck & Co. v. High-Tech Pharmacal Co., 482 F.3d 1317, 1320 (Fed. Cir.
2007) (Rule 12(b)(6) and (c) motions each present "a purely procedural
issue not pertaining to patent law").

in the Plaintiff's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although the complaint need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," a plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).

Rule 12(b)(6) requires a plaintiff to allege sufficient factual information "to raise a right to relief above the speculative level" so as to "nudge the[] claims across the line from conceivable to plausible."  Id. at 555, 570; see Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950-51 (2009).  Under Iqbal, the court is to undertake a two-step analysis.  First, the court separates factual allegations from allegations not entitled to the assumption of truth (i.e., conclusory allegations, bare assertions amounting to nothing more than a "formulaic recitation of the elements").  Second, the court determines whether the factual allegations, which are accepted as true, "plausibly suggest an entitlement to relief."  129 S. Ct. at 1950-01.

The statute under which NCFAF's complaint proceeds provides three alternative grounds for imposition of a fine for false marking. NCFAF's claim for false marking is made under the second ground, which provides:

> Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented, for the purpose of deceiving the public . . . [s]hall be fined not more than $500 for every such offense.

35 U.S.C. § 292(a); see Doc. 1 ¶ 33. "Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States." 35 U.S.C. § 292(b). Section 292(b) authorizes a *qui tam* action in which a person may sue on behalf of the United States. The Federal Circuit, which has appellate jurisdiction with respect to patent appeals, recently observed that: "The two elements of a § 292 false marking claim are (1) marking an unpatented article and (2) intent to deceive the public." Forest Group, Inc. v. Bon Tool Co., 590 F.3d 1295, 1300 (Fed. Cir. 2009) (citing Clontech Labs. Inc. v. Invitrogen Corp., 406 F.3d 1347, 1352 (Fed. Cir. 2005)).[6] An article is "unpatented" if it is not covered by at

---

[6]   A claim against a party that played no role in the actual marking of the article requires a showing that the defendant (1) used the word "patent" (or word or number importing the article is patented) "in advertising in connection with any unpatented article" and (2) acted with intent to deceive the public. 35 U.S.C. § 292(a).

least one claim of the patent that is marked on the article. Clontech, 406 F.3d at 1352.

Monsanto argues that the complaint fails to state a claim upon which relief can be granted for two principal reasons: lack of factual allegations that the seeds are an "unpatented article;" and failure to plead facts showing it is plausible that the Defendants lacked a reasonable belief the seeds were covered by the '605 Patent.[7] Each argument is addressed in turn.

### 1. Unpatented Article

Monsanto argues that the complaint contains only conclusory allegations and provides no facts to support its claim that the seeds are an unpatented article. This is particularly problematic, Monsanto argues, in light of the several prior federal decisions that held that saved seeds are covered by the '605 Patent for Roundup Ready® soybean seeds. Dow asserts a similar argument but, couching it as one of *stare decisis*, argues that this court "is not at liberty to reach a decision at odds with the Federal Circuit's prior findings that RR [Roundup Ready] soybean seed is covered by the '605 patent."[8] (Doc. 31 at 7-8).

---

[7] Pioneer makes similar arguments in separate briefing and adopts the reasons contained in the motions and briefs of Monsanto and Dow. (Doc. 38 at 3, 15-19.) Defendant CPS joins and adopts the motions filed by Monsanto, Dow and Pioneer. (Doc. 40.)

[8] Monsanto does not argue that *stare decisis* applies to the Federal Circuit decisions, stating rather that prior opinions are not

NCFAF claims it has a new "mutation" theory for why the '605 Patent does not apply to the seeds in question. Though not articulated anywhere in the complaint, NCFAF argues in its briefing that the Roundup Ready® seeds have undergone genetic mutations over multiple generations and that "[g]enetic testing will confirm that the disclosed DNA promoter sequence listed in the '605 patent is far different than what is found in the current soybeans." (Doc. 35 at 7.) Counsel projected that they will show that none of the four recognized strains of CaMV exists in current Roundup Ready® soybean seeds. In support of this assertion, NCFAF attaches to its brief a published report on a study of mutations. (Doc. 35 at 7.)[9] As NCFAF argued at the hearing on these motions, the '605 Patent specification is limited to DNA taken directly "from" viruses and does not cover seeds containing DNA copies, such as those allegedly in this case, that were "derived from" the viruses.

NCFAF dismisses the prior Federal Circuit opinions as being neither controlling nor persuasive. In Scruggs, it contends, the plaintiff never contested the district court's claim construction finding that the '605 Patent read on the seeds.

necessarily binding in the context of a motion to dismiss. Monsanto, however, argues that in light of these prior decisions NCFAF cannot maintain a claim that Monsanto lacked a reasonable belief that the soybeans were covered by the patent. (Doc. 20 at 9-10.)

[9] The court excludes matters outside the pleadings in ruling on the pending motions. The motions, therefore, will not be converted into motions for summary judgment. See Fed. R. Civ. P. 12(d).

Thus, it argues that the circuit court's statements regarding claim construction are *dicta*. Although irrelevant to the substantive issues, NCFAF also urges that the farmers in <u>Scruggs</u> and the other cases lacked the resources to defend the cases properly and contends that NCFAF will be the first to challenge the '605 Patent with substantial resources. In any event, it intends through its action to aid farmers "by obtaining a judicial determination of the scope of the '605 Patent." (Doc. 32 at 4.)

The court need not anticipate at this stage factual contentions NCFAF has not alleged in its complaint. The complaint is devoid of any factual allegation as to how the Defendants are alleged to have falsely marked the Roundup Ready® seeds. Those allegations that bear upon the "unpatented article" element of section 292 are wholly conclusory. <u>See</u>, <u>e.g.</u>, Doc. 1 ¶ 36 ("Upon information and belief, the contents of the bags of seeds sold commercially by the Defendants under the brand name 'Roundup Ready' are not covered by any claim of the '605 [P]atent.") NCFAF's attempt to develop its factual allegations solely in its briefing and during oral argument ignores the requirements of <u>Iqbal</u> and <u>Twombly</u>; it is the complaint that is the focal point of the current inquiry. Apart from the allegation in paragraph 37 that the act of replanting saved seeds does not create a seed covered by the '605 Patent

(which is untethered to any other allegation and appears to be swimming against the current of existing Federal Circuit decisions), there is no basis on this record to conclude that NCFAF could show a plausible claim for relief. Whether the prior decisions relating to the '605 Patent will provide a formidable challenge to a false marking claim, as Defendants assert, must be assessed in the context of a complaint that contains sufficient factual allegations to identify a basis for relief. The complaint will be dismissed, therefore, but without prejudice in the event NCFAF chooses to refile it with an articulated factual basis that can be assessed for plausibility.

### 2. For The Purpose Of Deceiving The Public

Monsanto also argues that NCFAF has failed to allege facts supporting an inference that Defendants lacked a reasonable belief that the Roundup Ready® seeds were subject to the '605 Patent, and thus NCFAF cannot satisfy the "intent to deceive" requirement. Given the holdings of the previous litigations, Monsanto argues, Defendants had as a matter of law at least a reasonable belief of such coverage. Without alleging any facts to show that the soybean seeds described in the complaint differ in any way from the saved seeds at issue in the prior litigation, Monsanto argues, NCFAF cannot plausibly show that Defendants lacked a reasonable belief that the seeds were properly marked and thus acted with the necessary intent to

14

deceive.  Monsanto also argues that NCFAF's allegation that "each of the Defendants knows or should have known that the contents of the [marked soybean] bags are not covered by any claims of the '605 patent" is insufficient because constructive knowledge claims do not meet the necessary intent to deceive threshold in false marking cases.

NCFAF asserts that <u>Clontech Labs. Inc. v. Invitrogen Corp.</u>, 406 F.3d 1347 (Fed. Cir. 2005), permits its allegation that each of the Defendants "knows or should have known" that the seeds are not covered by the '605 Patent. (Doc. 1 ¶ 40.) In support, NCFAF relies on <u>Clontech</u>'s statement that "[i]n order to establish knowledge of falsity the plaintiff must show by a preponderance of the evidence that the party accused of false marking did not have a reasonable belief that the articles were properly marked." (Doc. 32 at 7 (citing <u>Clontech</u>, 406 F.3d at 1352-53).)

Section 292(a) requires the entity marking or advertising do so "for the purpose of deceiving the public." As discussed in more detail <u>infra</u> as to the Rule 9(b) motions, the Federal Circuit recently observed that the bar in proving deceptive intent is "particularly high, given that the false marking statute is a criminal one, despite being punishable only with a civil fine." <u>Pequignot v. Solo Cup Co.</u>, 608 F.3d 1356, 1363 (Fed. Cir. 2010) (citing S. Rep. No. 82-1979, 1952 U.S.C.C.A.N.

2394, 2424 (1952), which stated "This is a criminal provision."); see Clontech, 406 F.3d at 1352 ("The statute supplies a civil fine."). Because the statute requires that the false marker act "for the purpose of deceiving the public," the claimant must show "a purpose of deceit, rather than simply knowledge that a statement is false." See Solo Cup, 608 F.3d at 1363. As explained by the Federal Circuit, "[i]ntent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true." Forest Group, 590 F.3d at 1300 (quoting Clontech, 406 F.3d at 1352).

Under Clontech and Supreme Court precedent, "the combination of a false statement and knowledge that the statement was false creates a rebuttable presumption of intent to deceive the public, rather than irrebuttably proving such intent." Solo Cup, 608 F.3d at 1362-63. "Thus, mere knowledge that a marking is false is insufficient to prove intent if [a defendant] can prove that it did not consciously desire the result that the public be deceived." Id. at 1363. A party's good faith belief is relevant to determining whether that party acted with intent to deceive. Id. at 1364.

Therefore, a complaint under section 292 must contain sufficient factual allegations to support a plausible inference

16

that a Defendant intended to deceive the public.[10] The complaint here alleges that the Defendants "knew or should have known" that the articles were not properly marked and marked them "for the purpose of deceiving the public." (Doc. 1 ¶¶ 40, 41.) Defendants have thus pleaded the element of intent under <u>Solo Cup</u>.[11] 608 F.3d at 1363 (noting that the fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing the inference that there was a fraudulent intent, citing <u>Clontech</u>). As with the allegations of "unpatented article," however, the complaint fails to plead sufficient factual allegations to support an inference of intent to deceive.

As noted earlier, the only factual allegation, which is never related to any other allegation of the complaint, is that "the act of replanting seeds from a crop grown from seeds purchased from the Defendants does not create any plant or seed

---

[10] This is in addition to the requirement that the allegations be pleaded with particularity under Rule 9(b), as noted <u>infra</u>.

[11] "Knowledge" is proof of, but does not establish, "purpose." <u>See Solo Cup</u>, 608 F.3d at 1363 (noting that, "[a]s the Supreme Court has explained in distinguishing the mental states of 'purpose' and 'knowledge' in criminal statutes, 'a person who causes a particular result is said to act purposefully if he consciously desires that result, whatever the likelihood of that result happening from his conduct, while he is said to act knowingly if he is aware that that result is practically certain to follow from his conduct, whatever his desire may be as to that result.'" (citing <u>United States v. Bailey</u>, 444 U.S. 394, 404 (1980)). Proof of intent and knowledge, while subjective, therefore, are established by objective criteria. <u>Clontech</u>, 406 U.S. 3d at 1352.

covered by the '605 Patent." (Doc. 1 ¶ 37.) In the absence of any factual allegation as to how the seeds are not covered by the '605 Patent, and in light of the multiple federal decisions holding that the '605 Patent reads on saved seeds, it is difficult to discern how any Defendant plausibly could have known that it was falsely marking an unpatented article or, as articulated by the Federal Circuit in Clontech, acting without a reasonable belief that the Roundup Ready® seeds were covered by the '605 Patent. Indeed, what the complaint alleges is the Defendants' purpose that supports an intent to deceive – that the Defendants acted "for the purpose of deceiving the public, as part of Monsanto's scheme to extract a continuing stream of license revenue from farmers through the intimidatory threat of a patent infringement lawsuit" (id. ¶ 41) -- on this complaint can at least equally be read as no more than Monsanto's enforcement of its '605 Patent rights that have been affirmed in prior federal decisions. Thus, the motion to dismiss will be granted on this ground as well, without prejudice.

**B. Dow's Rule 12(c) Motion**

Dow also moves for judgment on the pleadings. Although distinct from a motion to dismiss, a motion brought under Rule 12(c), at least when essentially asserting a failure to state a claim upon which relief may be granted, is subject to the same standard. See Independence News, Inc. v. City of Charlotte, 568

18

F.3d 148, 154 (4th Cir. 2009); Barbier v. Durham County Bd. of Educ., 225 F. Supp. 2d 617, 630 (M.D.N.C. 2002). Thus, as in the case of a motion pursuant to Rule 12(b)(6), the facts in the complaint must be taken in the light most favorable to the Plaintiff.

In addition to the arguments made by Monsanto, Dow argues that the complaint premises its claims on a contention that the Defendants are falsely marking replanted seeds saved from prior Roundup Ready® seeds which are not covered by the '605 Patent. (Doc. 1 ¶ 37.) Because the complaint fails to allege that Dow ever purchased or sold to any farmer any saved Roundup Ready® seed, Dow asserts, it could not have marked such seed. (Doc. 31 at 12.) Moreover, Dow concludes, the Federal Circuit resolved in McFarling and David that planting such seeds infringes the '605 Patent, which settles the issue. (Id. at 12-13.)

In light of the fact that the complaint was filed before the Supreme Court's decision in Iqbal, the court in its discretion will treat Dow's motion as one for failure to state a claim and will grant it, without prejudice, on the same grounds and for the same reasons as the Rule 12(b)(6) motions to dismiss. See Amersbach v. City of Cleveland, 598 F.2d 1033, 1038 (6th Cir. 1979) ("mere fact that the motion was couched in terms of Rule 12(c) does not prevent the district court from disposing of the motion by dismissal rather than by judgment"),

disapproved of on other grounds by Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528 (1985); WESI, LLC v. Compass Environmental, Inc., 509 F. Supp. 2d 1353, 1359 n.4 (N.D. Ga. 2007); see also 1 Motions in Federal Court § 5:158 (3d ed.) ("The relief granted on a motion for judgment on the pleadings under FRCP 12(c) may depend on the grounds asserted in the motion. For example, if the motion asserts the failure to state a claim upon which relief can be granted, the court may grant a dismissal of the complaint under Rule 12(b)(6) rather than a judgment on the pleadings under Rule 12(c).").

### C.    Rule 9(b) Motions

Monsanto also asserts that the complaint should be dismissed pursuant to Federal Rule of Civil Procedure 9(b) for failure to plead fraud with the required particularity or, in the alternative, NCFAF should be required to do so.[12]  Rule 9(b) provides that in alleging fraud, a "party must state with particularity the circumstance constituting fraud."  On the other hand, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

Monsanto argues that in false marking cases allegations of intent to deceive must be pleaded with specificity because Rule

---

[12]    Pioneer adopted and incorporated by reference the arguments of Monsanto with respect to Rule 9(b).  (Doc. 38 at 3, 19).

9(b) reaches claims that are "grounded in fraud" or "sound in fraud."  (Doc. 20 at 12-16 (citing <u>Clontech</u>, 406 F.3d 1351).) Monsanto contends that the complaint rests on allegations based upon "information and belief" and that no facts are pleaded with respect to them to satisfy the threshold for particularity required by Rule 9(b).  Monsanto concludes that the complaint lacks any factual basis to support even an inference of deceptive intent.  Finally, Monsanto alleges that by lumping all Defendants together, NCFAF has failed to differentiate its fraud allegations as to each Defendant's alleged role and intent. (Doc. 20 at 12-17.)

NCFAF argues that section 292 is not a fraud-based statute and that under Rule 9(b) intent and knowledge may be alleged generally.  If fraud were required, NCFAF argues, the Federal Circuit would require proof by clear and convincing evidence, which it has not done.  (Doc. 32 at 2, 9.)  Monsanto responds that the clear and convincing evidence standard does not operate in lockstep with Rule 9(b), citing <u>Ackerman v. Northwestern Mutual Life Insurance Company</u>, 172 F.3d 467, 470 (7th Cir. 1999).  (Doc. 42 at 9.)

There is no controlling precedent clearly deciding whether Rule 9(b)'s heightened standards apply to section 292 claims. Courts have split on the issue.  Some courts have held that Rule 9(b) does not apply to section 292 cases.  <u>See</u> <u>Song v. PIL,</u>

<u>L.L.C.</u>, No. 08-C-2807, 2010 WL 1541304, at *1 (N.D. Ill. Apr. 14, 2010) (noting split but finding plaintiff failed to plead sufficiently intent to deceive even under Rule 8(a));[13] <u>Third Party Verification, Inc. v. Signaturelink, Inc.</u>, 492 F. Supp. 2d 1314, 1327 (M.D. Fla. 2007) (noting "no case law . . . require[s] the Rule 9 level of pleading to claims for false marking"); <u>see</u> <u>also</u> <u>Harrington v. CIBA Vision Corp.</u>, No. 3:08-cv-00251 (W.D.N.C. May 29, 2009) (bench order) (declining to adopt defendant's arguments that Rule 9(a) and (b) apply to section 292(b) in light of then lack of precedent).

More recently, however, several courts have required complaints alleging false marking claims under section 292 to comply with Rule 9(b). <u>See</u> <u>Brinkmeier v. BIC Corp.</u>, Nos. 09-860-SLR, 10-01-SLR, 2010 WL 3360568, at *8 (D. Del. Aug. 25, 2010) (agreeing with other district courts that Rule 9(b) applies to section 292 claims); <u>Hollander v. Etymotic Research, Inc.</u>, No. 10-526, 2010 WL 2813015, at *7 (E.D. Pa. July 14, 2010) (court "persuaded by the law of other district courts holding that false marking claims are fraud-based claims subject

---

[13] The Federal Circuit recently remanded a case to the trial court for a determination whether the heightened pleading requirement under Rule 9(b) applied to the "intent to deceive" element of section 292. <u>See</u> <u>Stauffer v. Brooks Bros., Inc.</u>, __ F.3d __, 2010 WL 3397419, at *6 (Fed. Cir. Aug. 31, 2010); <u>cf.</u> <u>Exergen Corp. v. Wal-Mart Stores, Inc.</u>, 575 F.3d 1312, 1325-31 (Fed. Cir. 2009) (finding that inequitable conduct claims, which also require an intent to deceive, are subject to Rule 9(b)).

to Rule 9(b)'s heightened pleading standards"); <u>Advanced Cartridge Techs., LLC v. Lexmark Int'l, Inc.</u>, No. 8:10-cv-486-T-23TGW, 2010 WL 2640137, at *1 (M.D. Fla. June 30, 2010) (false marking cases are fraud-based and subject to Rule 9(b)); <u>Simonian v. Cisco Sys., Inc.</u>, No. 10-C-1306, 2010 WL 2523211, at *3 (N.D. Ill. June 17, 2010) (same); <u>Juniper Networks v. Shipley</u>, No. C 09-0696 SBA, 2009 WL 1381873, at *4 (N.D. Cal. May 14, 2009) (same), <u>on reconsideration in part</u>, 2010 WL 986809 (N.D. Cal. Mar. 17, 2010).

The court concludes that the better reasoned approach is that section 292 is subject to the heightened particularity requirements of Rule 9(b). As noted in <u>Simonian</u>, false marking is only actionable under <u>Forest</u> when there is intent to deceive or, as stated in <u>Solo Cup</u>, "a purpose of deceit." Therefore, a claim brought under section 292 is a fraud-based claim. While intent may be alleged generally, the circumstances constituting intent to deceive must be alleged with particularity. <u>Cf. Cozzarelli v. Inspire Pharmaceuticals, Inc.</u>, 549 F.3d 618, 629 (4th Cir. 2008) (noting, in securities claim, that a plaintiff cannot escape the requirements of Rule 9(b) when it makes an allegation that has the substance of fraud, and dismissing under <u>Twombly</u>). A primary purpose of Rule 9(b) is to protect a defendant from reputational harm resulting from frivolous

allegations, and the court can discern no logical reason it should not apply here. Id.

The sparse facts alleged in the complaint do not meet the requirements of particularity under Rule 9(b). The complaint fails to allege any facts to indicate on what basis each Defendant may have falsely marked its product. The single factual allegation that "the act of replanting seeds from a crop grown from seeds purchased from the Defendants does not create any plant or seed covered by the '605 Patent" is inadequate. (Doc. 1 ¶ 37.) The complaint's allegation that "each of the Defendants marks or has marked its bags for the purpose of deceiving the public" is wholly conclusory. (Id. ¶ 41.) There is simply no other allegation to indicate any factual basis to plausibly conclude that any Defendant acted with an intent to deceive. Indeed, in light of the reported decisions upholding the reading of the '605 Patent on saved seeds, the bare bones complaint fails to provide a plausible claim as to saved seeds.

It is true that "[p]leading on 'information and belief' is permitted under Rule 9(b) when essential information lies uniquely within another party's control, but only if the pleading sets forth the specific facts upon which the belief is reasonably based." Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1330 (Fed. Cir. 2009). The complaint provides neither the "information" on which NCFAF relies nor any

plausible reasons for its "belief." See id. at 1330-31. Nor does the complaint indicate that the facts are uniquely in the possession of Defendants. To the contrary, NCFAF's theory of liability forecast in its briefing and at oral argument makes clear that NCFAF possesses some idea of its basis for alleged liability which is not articulated in its complaint.

The complaint also fails to allege intent to deceive with particularity as to each Defendant, even though they stand in different relationships to each other and to the Plaintiff. Indeed, the complaint itself indicates that various Defendants are not similarly situated. For example, Monsanto Technology LLC is alleged to be the patent holder, and each of the remaining Defendants are alleged to be licensees who are required by contract to mark their soybean seed bags with the '605 Patent number. (Doc. 1 ¶ 20.) The complaint fails to allege any facts demonstrating how it is plausible that such licensees, who are bound by contract, would have marked their product with an intent to deceive.

The court finds, therefore, that the complaint fails to "state with particularity the circumstances constituting fraud." See Advanced Cartridge, 2010 WL 2640137, at *1 (complaint alleging that the defendant "knows, or reasonably should know, that marking the Cartridge Products with patents that do not cover the Cartridge Products, or patents that are invalid or

expired will deceive the public" with sparse factual detail "utterly fails to 'state with particularity the circumstances constituting fraud'"); <u>Brinkmeier v. Graco Children's Prods. Inc.</u>, 684 F. Supp. 2d 548, 553-54 (D. Del. 2010) (conclusory statements regarding intent to deceive the public fail to state a claim under section 292). The complaint will be dismissed without prejudice on the independent ground that it fails under Rule 9(b).

### III. CONCLUSION

For the reasons set out above, the complaint will be dismissed without prejudice to NCFAF refiling it to cure the deficiencies noted.

IT IS THEREFORE ORDERED as follows:

1. The motions to dismiss NCFAF's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendants Monsanto Company, Monsanto Technology, LLC, Asgrow Seeds Company LLC, and Delta & Pine Land Company (Doc. 20) are GRANTED WITHOUT PREJUDICE;

2. The motion to dismiss NCFAF's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) by Pioneer Hi-Bred International, Inc. (Doc. 37) is GRANTED WITHOUT PREJUDICE;

3. The motion to dismiss NCFAF's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Crop

Production Services, Inc. (Doc. 40) is GRANTED WITHOUT PREJUDICE; and

4.   The motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) filed by Dow AgroSciences, LLC (Doc. 30) is treated as a motion to dismiss and is GRANTED WITHOUT PREJUDICE.

NCFAF is granted thirty (30) days within which to file an amended complaint, should it choose to do so.


                         /s/   Thomas D. Schroeder
                         United States District Judge


September 27, 2010